(675 P.2d 931)

No. 54,818

JEAN C. HALL, *Appellant*, v. QUIVIRA SQUARE DEVELOPMENT CO., INC., and REVCO DRUG CENTERS OF KANSAS, INC., *Appellees.*

Opinion filed February 2, 1984.

*F. Lawrence McAulay, Jr.,* of McAulay & Owens, of Lenexa, for appellant.

*Jerome V. Bales* and *Jeffrey L. Lauersdorf,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellee Quivira Square Development Company, Inc.

*Rolland J. Exon* and *Thomas E. Ruzicka,* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, of Olathe, for appellee Revco Drug Centers of Kansas, Inc.

Before ABBOTT, P.J., PARKS, J., and HARRY G. MILLER, District Judge retired, assigned.

ABBOTT, J.: In this personal injury case, the plaintiff, Jean C. Hall, appeals from the summary judgment granted to Revco Drug Centers of Kansas, Inc., (Revco) and from the judgment quashing service of process on Quivira Square Development Co., Inc. (Quivira Square).

Revco is a tenant of Quivira Square. Plaintiff had been shopping at the Revco store located in the shopping center owned by Quivira Square. She was going to her car when she fell in the parking lot at a point approximately 40 feet from the entrance to Revco's. Her fall was caused by an uneven surface where the

driveway in the parking lot converged with the general parking area of the shopping center. The driveway and general parking area are both used by the customers of some seventeen stores located in the shopping center. Under the terms of Revco's lease with Quivira Square, all sidewalks, driveways, service areas and all parking spaces are designated as common areas for the use of all the shopping center lessees. The lease provides that Quiriva Square has sole responsibility to make all repairs and perform all maintenance in those areas.

The trial court granted summary judgment to Revco, having concluded that Quivira Square had retained control over the common areas (parking area, driveways, sidewalks) and that Revco had no duty to maintain the parking lot and no duty to warn customers of any probable dangerous condition.

The parties recognize that the general rule in Kansas is that the owner or occupier of real property owes a duty to business invitees to maintain the premises in a reasonably safe condition. When real property is leased to a tenant, the duty to maintain is on the lessee. It is equally well settled that a lessor is liable for failure to maintain the leased area retained for the common use of the lessor's tenants when the tenants and their customers are merely entitled to use the common area. *Borders v. Roseberry,* 216 Kan. 486, 488-91, 532 P.2d 1366 (1975).

Plaintiff's position is that Revco and Quivira Square have concurrent liability.

In a personal injury case occurring in a shopping center parking lot, the key to ascertaining the liability of a landlord and tenant for failure to maintain or failure to warn of a defect in a common area is who occupies the common area with the intent to control it. *Moore v. Muntzel,* 231 Kan. 46, 49, 642 P.2d 957 (1982); *Farran v. Peterson, Administrator,* 185 Kan. 154, 159, 342 P.2d 180 (1959); Annot., 48 A.L.R.3d 1163; Restatement (Second) of Torts §§ 328E, 342 (1965). Here, the shopping center landowner, Quivira Square, by its lease retained control and had the duty to maintain the common area, which included the driveway and parking area where plaintiff fell, and which was under the exclusive possession and control of Quivira Square. We are satisfied the trial court did not err in granting summary judgment to Revco.

Plaintiff's next complaint concerns the trial court's judgment

quashing the service made on Quivira Square in Missouri because it was not made by an officer of that state as was required by K.S.A. 60-308(a)(2) (Weeks) when service was made.

Plaintiff filed her cause of action on the last day allowed by the two-year statute of limitations. No effort was made to obtain service on Quivira Square until 89 days later when a special process server was appointed for the purpose of making service in Missouri. Quivira Square was served in Missouri that same day. The trial court sustained Quivira Square's motion to quash service of process and dismissed plaintiff's cause of action because the special process server was not an officer of the State of Missouri as required by K.S.A. 60-308(a)(2) (Weeks). Plaintiff discovered that the legislature had amended K.S.A. 60-303 so that effective July 1, 1982 (the date the motion to quash was heard in this case), a specially appointed process server could make service in or out of the state. Plaintiff subsequently filed a motion to amend the judgment and requested relief on the basis that the amended statute was newly discovered evidence. The trial court denied the motion and this appeal followed.

Plaintiff argues that at the time service was obtained, on the next to the last day possible if service was to relate back to a time within the two-year statute of limitations, a special process server was authorized to make service out of state. But plaintiff makes no argument in her brief that the amendment to K.S.A. 60-303 (which is clearly procedural) can be applied to this case, thus we do not consider that question.

Statutes that have application to the issue before us are: K.S.A. 60-204, which states:

"The methods of serving process as set forth in article 3 of this chapter shall constitute sufficient service of process in all civil actions and special proceedings, but they shall be alternative to, and not in restriction of different methods specifically provided by law. In any method of serving process, *substantial compliance* therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected." (Emphasis supplied.)

K.S.A. 60-308 (Weeks), which provides for personal service outside Kansas, states in pertinent part:

"(a)(2) The service of summons shall be made in like manner as service within this state, by any officer authorized to make service of summons in *this* state where defendant is served. . . .

. . . .
"Nothing herein contained limit[s] or affects the right to serve any process in any other manner now or hereafter provided by law." (Emphasis supplied.)

K.S.A. 60-303, which states in pertinent part:

"Special appointments to serve process shall be made freely when substantial savings in travel will result. A person specially appointed to serve process may make such service any place in the state . . . ."

We note that K.S.A. 60-308(*a*)(2) (Weeks) contains a misprint that reads, "authorized to make service of summons in *this* state where defendant is served." (Emphasis supplied.) The word "this" should read "the." It does so read in the original enactment, in the 1976 Session Laws (ch. 253, § 1) and in the 1982 supplement to 60-308. Hall does not make an issue of the misprint.

Hall argues that K.S.A. 60-308(*a*)(2) allows out-of-state service to be in a "like manner as service within this state" and since K.S.A. 60-303 allows for a special process server to be appointed to serve summons in this state, the trial court can appoint a special process server to make valid out-of-state service.

K.S.A. 60-308(*a*)(2) requires that service be made by "any officer authorized to make service of summons in this state where defendant is served." Kansas courts have consistently held that service made by one not authorized by statute to make service is defective and subject to timely objection. *Finn, Administratrix v. Veatch*, 195 Kan. 410, 407 P.2d 535 (1965); *Home Owners Loan Corp. v. Clogston*, 154 Kan. 257, 118 P.2d 568 (1941); *Kincaid v. Frog*, 49 Kan. 766, 31 Pac. 704 (1892); *Branner v. Chapman*, 11 Kan. *118 (1873); *State v. Marshall & Brown-Sidorowicz*, 2 Kan. App. 2d 182, 193, 577 P.2d 803, *rev. denied* 225 Kan. 846 (1978).

In *Briscoe v. Getto*, 204 Kan. 254, 256-57, 462 P.2d 127 (1969), our Supreme Court reasoned as follows:

"Before there can be a valid personal service of process there must be a substantial compliance with some method of process provided in K.S.A. 60-301 *et seq.* It is only after substantial compliance that irregularities and omissions are cured by awareness of a pending proceeding. K.S.A. 60-204, insofar as material here, provides:

" '. . . In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or

proceeding was pending in a specified court in which his person, status or property were subject to being affected.'

"This is a case of first impression and we find no precedent to guide us. However, as we read the statute it seems clear that new methods of service were not anticipated. There must first be substantial compliance with some statutory method of service. Irregularities or omissions will then be ignored if the court finds that the party to be served was made aware that an action or proceeding was pending, etc."

When service was made in this case, personal service outside this state was to be obtained the same way as service within this state, by any officer authorized to make service of summons in the state where the defendant is served. The special process server appointed by the district court of Johnson County, Kansas, was limited by K.S.A. 60-303 to making service within Kansas. As Judge Gard commented in 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-303 (1983 Supp.), the 1982 amendment *extended* the power of the special process server "to serve process anywhere out of the state as well as within the state." The Comment to Vernon's Kansas C. Civ. Proc. § 60-303 (1983 Supp.) makes that same observation and also states, "For service outside the state to be effective, the special process server must be [an] 'officer authorized to make service of summons in the state where the defendant is served.' "

We are satisfied that on the date service was made on Quivira Square, the special process server appointed by the district court of Johnson County, Kansas, was not authorized by the laws of either Kansas or Missouri to make service in Missouri. Without statutory authority, service by the special process server could be no more effective than if served by a person off the street, or by merely mailing service to the defendant. Thus the trial court correctly quashed the service of summons and, since the statute of limitations had run, dismissed the plaintiff's cause of action.

Affirmed.